May it please the court. Joseph Klappage for Appellant Raju Mehta in Case 55239 and for all of the appellants in 57169. And if I could, I'd like to try to reserve a minute or two for rebuttal. This appeal is about the type of evidence that's necessary to establish causation and damages in an unfair competition case under the Lanham Act. There's also an issue about when, under what circumstances, disgorgement of profits is permissible. And there's a really tricky question of whether a district court has jurisdiction to consider a Rule 60B motion. I'm going to start with the causation and damages issue because I think it's really the meat of the main appeal. In this case, Out of the Box failed to present sufficient evidence to establish that it lost sales to El Paseo as a result of El Paseo's advertisements. And I'd like to highlight three specific deficiencies of proof in this case. The first was the evidence at the trial showed that although El Paseo was not paying as much for gold as it said it was in its advertisements, it was still paying more for gold than Out of the Box. And I would refer you to the record at page 2216 on Volume 11, page 428 in Volume 3, 190 to 192 in Volume 2. Out of the Box is paying in the 60 percent range, that's a direct quote, in the 60 percent range of the prevailing market price for gold. Can I back you up for a second? So say we agreed with you that there wasn't evidence of lost sales. The jury still could have found liability based on loss of goodwill. And I don't see anyone talking about that here, and I'm trying to figure out what to do with that. Can you address that, please? Well, it's an interesting issue. I mean, because I think you could – I mean, the jury said loss of sales or loss of goodwill. So maybe they thought it was loss of goodwill, and you haven't attacked that. So I'm not sure what to do. You're only attacking half of what the jury could have found. I guess I would – my response to that would be that there's no evidence of substantial goodwill here, particularly where Out of the Box had only been in existence for three months before these situations. But, sir, why didn't someone argue – I know you weren't counsel below, but why didn't someone argue that that shouldn't be in this jury instruction or that shouldn't be on the verdict form? There's no evidence to support it or something. No one's – I mean, I look at the verdict form, and I think, what was the jury thinking? And I'm kind of at a loss about what's – why this case is not talking about everything the jury might have been thinking. Well, I mean, the case law is very clear that there's an especially heightened standard for causation and damages in connection with a new or nascent business, and that's exactly what we have here. They just opened up their doors. They hardly started. It's inconceivable to imagine that they had any significant goodwill, certainly not sufficient goodwill to justify this size of a damages award, and certainly then I think it would then – if you're concerned about the goodwill issue, then we have a question about whether or not the new trial motion should have been granted, because that would be a grounds for granting a new trial. I mean, I think there could have been an argument that there was a disconnect between the damages theory and this goodwill – perhaps goodwill liability theory, but that's also not something I see having been argued. Right. Well, and I think I would also say that there was really no evidence presented at trial that there was any goodwill to be lost, and so to the extent that it was – So why was it on the jury form? I don't understand what happened here. I think it would be because people are imperfect. Clearly, the evidence presented at trial was for lost sales. That was the theory of damages that was presented. There's no evidence – But there were two phases, right? So there was a liability phase. I think your causation argument is – I mean, you're arguing it for both, but the first step is did they – was there a liability problem here? Should there be a new trial on liability, or should there not have ever been a – I mean, it seems like your first causation thing is just about liability, isn't it? Absolutely. I think there was a – I mean, causation and damages are both elements of the claim. There's no causation here. There's no causation because we're paying more for gold than they are, and there's no causation – there's a couple of other following arguments, but, I mean, this is a gold-buying business, right? If the three of you were gold buyers and I wanted to sell my ring, I don't care which one of the three of you buys it. I just want whoever's going to give me the most money, and the evidence here was that El Paseo was paying more money. And so it's very, very hard to imagine how – there's basically no – to establish causation, to establish liability here, the out-of-the-box would have to show that the gold-selling consumers out there would have sold their gold to out-of-the-box for less money than they would have gotten from other competitors such as El Paseo. And there's – I mean, that's just contrary to law, to fact, to logic, that people act against their selfishness. I mean, maybe the jury thought people walked into your client – or El Paseo's store, thinking they were probably a good store, holding this ad in their hand, left really angry when they heard that they weren't getting to have the price in the ad met, and that was a loss of goodwill. And if that's what the jury thought – like, where's the problem in that being what the jury thought and that being the basis for the verdict? And if that's what the basis of the verdict is, then how can you argue there's no causation? Well, the ads – the ads were El Paseo's ads, so it's difficult to see how El Paseo – Oh, I'm sorry, I'm sorry. So I got it wrong. They would lose goodwill because of El Paseo's advertising. I apologize. I said it wrong. But so you go with El Paseo's ad into out-of-the-box – I apologize. Right. You go into out-of-the-box. You're mad when you leave because they're not going to match the price of the ad. How does that not cause a loss of goodwill for out-of-the-box? Well, you're not losing goodwill because they wouldn't have been your customers anyways because you're not competing at the fundamental core here, which is paying more money, right? But if a customer walks in, has already made the effort to walk into a store, they are – if they're treated fairly, they may buy there. And even if the difference is you got more at out-of-the-box than you did at El Paseo, but it's minor, enough of a minor amount that I wouldn't drive the extra few miles to do two things. I'll just buy it at El Paseo because I like the way their store looks or it's closer to me or whatever. You have affected a sale there, haven't you? Right, but I guess what I would say is there's no evidence that there are any considerations going on here other than sheer who's going to pay me more for gold. And as this court noted in its Gray decision, when you have a fungible service like this one, the most important competitive factor is price. And on that most important competitive factor, out-of-the-box was below El Paseo. And I would note that in this context, when we're talking about a Lanham Act case, you're talking about one business competitor suing another. In this context, the courts have made very clear that we have to have an exacting standard of causation and damages because we want businesses to compete in the sale of providing goods and services and not compete in the courtroom when they've lost, when they've provided an injury. But we don't want false advertising. I think that is absolutely correct. We don't want false advertising. If there's false advertising and you get caught with it, then you've got to pay. Then you have to pay if the other— No, there's no if about it. Oh, there is. In the statute. The if is this case. If the plaintiff lost sales as a result of the false advertising, and that is the fundamental deficiency in proof here. Because I would submit, number one, they didn't lose sales because we were paying more. I would submit, number two, that there's no evidence of lost sales, period, no admissible evidence. The only evidence of lost sales is customers coming in and saying, can you meet this price? You can't. Okay, I'm going over there. And the Stellwagen decision in the Third Circuit, squarely on point, says that while that out-of-court communications like that are admissible for state-of-mind purposes, they are not sufficient evidence to establish lost sales. And so I would—I mean, if you read one case— Is there a double recovery in this case? I mean, does that involve double recovery? This is the disgorgement of profits argument. Right. Oh, so flipping to the disgorgement. So first we're talking about causation and damages. So there's two reasons why disgorgement's got to be thrown out. The first one, I think, is kind of the most obvious, which is the court ordered appellant Mata to disgorge the profits of El Paseo. And there's no authority that suggests that a court can direct one defendant to disgorge profits that were received by another defendant. So that's the first kind of fundamental problem, and it's statutory. Section 117A specifically refers to disgorgement of a defendant's profits. And Mata didn't have any profits. There's no evidence of that. It was El Paseo's profits. Problem number one. Problem number two is here you have a classic case of double recovery. And I would refer this court to its statement in the Nintendo decision, 40F3-1010. Quote, recovery of both plaintiff's lost profits and disgorgement of defendant's profits is generally considered a double recovery under the Lanham Act. And the reason this case is kind of a great example of that, right, because on the one hand, out of the box was awarded both the sales that it lost to El Paseo as a result of the false advertisements, and then it was able to recover again the profits that El Paseo received for those exact same sales. So you have exactly a double recovery that you shouldn't have before. It's not permitted by the court. If you want any rebuttal time, we better stop you. So I'll give you two minutes for rebuttal, but let's stop there. All right. Thank you. May it please the Court. Matthew Kelly on behalf of Out-of-the-Box Enterprises, LLC. In preparing for this case, I will be quite honest with Your Honor that I didn't pick up on the goodwill aspect of it, and I'm more than happy to prepare any sort of supplemental briefing. And I think the reason is because it wasn't raised in the opening brief. But, again, if the court desires some sort of supplemental position on that particular issue, we're happy to do that. From my perspective, this case really comes down to the standards of review in all of the issues that we're dealing with. We're dealing with a jury verdict. We're dealing with standards of review that really militate in favor of affirming Judge Phillips' judgments in both of the appeals. The standard of review definitely helps you, but where is the evidence of any lost sales? Well, I think Judge Pregerson hit the nail on the head. You've got a customer coming into your store with an advertisement that says 92 percent, your competitor will pay. Will you match it? And they say no. They say, well, then we're going to go where we're going to get the most money. But the evidence at trial, and, in fact, I think the concessions in the brief, are that it's clear that El Paseo was not paying that advertised 92 percent. So they walk out the door and they go to where the ad is advertising, and they learn then that they're not going to pay that price, so then they probably walk out of that store, too. How do we have any lost sale for your client at that point? Well, I think that's where we get to the Hillman Doctrine. And I would – it's not in our brief, but this circuit has actually undertaken a pretty significant review of the Hillman Doctrine in U.S. v. Feaster, 544 Fed 2nd 353. It was a kidnapping case, a criminal kidnapping case, where the victim said he was going to meet Angelo at Sambo's North to get a pound of weed for free. And so at trial, the victim's friends, the trial court, allowed them to testify pursuant to the Hillman Doctrine. And what this court in Feaster said is that the Hillman Doctrine is an extraordinary doctrine because, quote, it does not require that the state of mind of the declarant be an actual issue in the case. Instead, under the Hillman Doctrine, the state of mind is used inferentially to prove other matters which are an issue. It goes on to describe – But we know, because your allegation is that the 92 percent was false advertising, that when they get to the store, they're going to learn they can't get 92 percent. So why do you think that that customer either would still buy or – sorry, sell – would still sell, or that that customer ever would have sold to you otherwise? I mean, maybe this customer only got interested in selling the gold because of 92 percent. And when they learn they don't get 92 percent, they just go home with their gold. I have two responses to that. Number one, there was evidence, and it was set forth at length, I believe, in the opening brief, that there was evidence that El Paseo was actually paying 92 percent. I believe the – Well, if that's true, then you don't have false advertising. Well, but you've also got a standard of review that gives deference to the jury's findings because the jury is free to accept all, some, or none of the customer. But they have to be consistent, right? So it's either 92 percent or it's not, isn't it? I mean, it's either false – I mean, you have to – I don't know that it's fair to have them have both – it's false and it's not false. The defendant's evidence at trial was that we've got these eight witnesses that are going to say really great things about us, that we pay 92 percent. And then, of course, the plaintiff had evidence, for example, the undercover sales, that proved that they weren't paying that. And I think what Mr. Klappich is referring to with respect to El Paseo was paying more, even though it wasn't paying what it said it was paying, it was still paying more than out of the box. I think that's a mathematical average, and quite frankly, I didn't dig into the record to find out exactly what every person testified to as to what El Paseo was paying on any particular case. But I think when we circle back to getting to the lost sale, they walk in, 92 percent, no, we can't meet it, we are going to go to El Paseo to sell. And what Hillman stands for and what Feaster confirms, and it kind of went through this awkward analysis, the Feaster court went on to say, the doctrine provides that when performance of a particular act by an individual is an issue in a case, his intention, state of mind, to perform that act may be shown. From that intention, the trier of fact may draw the inference that the person carried out his intention and performed the act. Within this conceptual framework, hearsay evidence of statements by the person which tend to show his intention is deemed admissible under the state of mind exception. And Feaster actually was grappling with this concept, but noted that the advisory committee's notes to Rule of Evidence 8033 that the Hillman doctrine, which allows evidence of intention as tending to prove the act intended, was left undisturbed. So that's how we get to evidence of lost sale. How do you deal with Stellwagen then? I'm sorry? So you're using this case about kidnapping, but Stellwagen is about customer statements that's much more on point. It says you can't use it for the kind of inference you're saying. Well, I think there's a problem with Stellwagen in the sense that it's rudimentary hearsay. So hearsay is an out-of-court statement offered to prove the truth of the matter asserted. There are all kinds of statements that are not hearsay, things that aren't offered for truth, or party-opponent admissions or identifications. But there's a certain classification of hearsay statements, meaning out-of-court statements offered for truth, that if they fit within a narrow exception, they will be admitted. And I think that's where the problem with Stellwagen and Hillman meet, is that in Stellwagen they said these statements of intent cannot be used for the truth of the matter asserted. Well, that's the definition of hearsay. Well, they can be used for the truth of the intent, but not for the idea that they actually did the sale. Understood. But I think Hillman modifies that and is a subset of 8033, and it really wasn't clear from my reading of Stellwagen what the anecdotal evidence was. In this particular case, we had a principal and I believe a manager of Out-of-the-Box testifying that, like I said, customers would come in, flash the ad, and say, we're leaving and we're going to take our business elsewhere. And I think that's where we get back to the lost sale. And, again, I don't know how that deals with – I mean, but not a single customer came into trial and said, I would have bought at your client if – No. Right? I don't believe that's the case, Your Honor. No. I mean, I wasn't there, but I'm certain that the evidence does not bear that out. We don't even know that those same people bought at his client. We don't. But, again, under Hillman you can – Sold. You're right. Sorry, sold. I keep saying bought. Sold. Kerry was free to infer that under the Hillman conception of the state of mind, exception under 8033. Well, you know, evidence is not a big deal anymore. It's all up to the discretion of the judge. That's why most law students don't even bother to take evidence these days. And that's unfortunate because evidence really is the foundation of what we do as lawyers, trial lawyers and appellate lawyers. And speaking of evidence, the standard of review is you review Judge Phillips for an abuse of her discretion in allowing this information in, which she said will allow the jury to infer what the people may have done next. I mean, that's classic Hillman. You review that for an abuse of discretion and reverse only if it's erroneous and prejudicial. Again, I think there was evidence all over the place as to what El Paseo claimed it was paying, from, in the brief, 73 percent to 92 percent. Again, the jury was free to accept or reject. Can you tell me the site again that you're saying? Are you saying Hillman? I'm trying to put in the site and I'm not finding. I must have written it down wrong. I will give you the citation, Your Honor. Out of the box didn't lie. I'm sorry, Your Honor? Out of the box didn't put in a false advertisement. That's correct. El Paseo did. That's correct. And some people would go in and they see, you know, they may see the ad, they may not, but they come in and they just want to sell the stuff. And maybe they thought they'd get 92 percent. And then you go back there and, well, we don't know about this gold. You know, we think there's some alloy in there or whatever it is. And so, you know, they're not in the business of selling gold. They just have some around and want to get rid of it. So they take what they get, right? Certainly. That's what they do. But if they're not going to match the price that's been falsely advertised, why wouldn't they go to the other place? I mean, I think that's the point. But this is where it's at. That site for us? I do, Your Honor. It's 145 U.S. 285. 145 U.S. 285? 1892. That's a far cry from 544 F. Second 353 that you gave us a few minutes ago. 353 was 1976. Yes, Your Honor. But the Hellman? So you're talking about an 1892 Supreme Court case for this evidentiary principle? Certainly. And, in fact, if you look at the advisory committee notes to 803, it specifically says, I know I'm over time, but I will briefly. And you think that's more on point than the recent case that's talking about this precise area of law or close to this precise area of law? I do. I do. Let me just point out. Well, we were on the gold standards then. Okay, counsel, I think we've taken you over your time. Thank you for your argument. Thank you. We'll give you two minutes for rebuttal. Thank you, Your Honors. To just briefly highlight the goodwill issue, there's no evidence of goodwill here for a three-month-old business. The case law makes clear that brand-new businesses don't have goodwill. More importantly, there was no evidence presented at trial by anyone that there was any lost goodwill here. So to the extent the jury's verdict could have been based on a loss of goodwill, it's also completely unsupported by the evidence because there was none. Turning to Hillman, Hillman basically establishes the state-of-mind exception, which has been embodied in large part in Evidence Code 803, Section 3. What's critical here is that Hillman has never been applied to excuse a plaintiff in an unfair competition case or any other business dispute from producing evidence of actual lost sales. And I think what's critical on this point, again, Stellwagen. I love Stellwagen. It's a great case. Footnote 16 expressly discusses and distinguishes the Hillman rule, and I'll quote it for you because it's so great. Although the customer statements at issue in this case clearly were admissible as evidence of why the customers were not purchasing tarmac maps from Stellwagen, i.e., because they thought they could get a better deal elsewhere, the statements were not admissible as proof that Stellwagen's customers did, in fact, purchase maps from one of Stellwagen's competitors. So Stellwagen specifically addresses this Hillman argument and says, no, no, no, we can't do that in this context. And I would also refer this court to a – it's also a hoary Supreme Court decision, but of more recent vintage, and I think that's the critical point. The Buckeye Powder Company case, 248 U.S. 65, which was decided by Justice Holmes after Hillman, in which he says, quote, statements by third persons of their reasons for refusing or ceasing to do business with the plaintiff are not admissible, where, quote, the statement was wanted not as evidence of the motives of the speaker, but as evidence of the facts recited as furnishing the motives. And I think even the Supreme Court has recognized in the Buckeye Powder Company case you can't apply Hillman in this context. It just doesn't apply. And so unless the panel has any further questions, I would submit. I would make one note, because I know we didn't talk about the Rule 60B issue, which is a really natty issue. I'm not sure that the panel can get around avoiding it because the appellants in the two appeals are different. And so there are entity appellants in the Rule 60 appeal that even if you reverse the judgment as to appellant meta in the appeal from the merits would still be affected by what happens on the Rule 60B. So I think you may have to wade into that really messy issue. Thank you, Your Honor. Thank you for your arguments. The total amount that your client would be required to pay if this ruling stands would be how much? There was $1.5 million in damages, $880,000 or $830,000 in disgorgement of profits. And our argument is that it should all fall out. And then our fallback argument is that at the very least the disgorgement should fall out so that only the $1.5 remains. But again, our strong position is that there's no evidence for any of it. Is there any double recovery in that amount that you're just saying? Yes. Our argument is that awarding the $1.5 million in lost profits and then awarding $880,000 in disgorgement of profits from the defendant is a double recovery. And we cited the Nintendo case that really is squarely on point on that. Thank you. Thank you both sides for your arguments. The case is submitted and we're adjourned for the day.
judges: Pregerson, Friedland, Lasnik